## IN RE CHRISTINA M. ET AL.*
### (SC 17511)
### (SC 17512)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 18—officially released November 7, 2006

*Raymond J. Rigat*, for the appellant in Docket No. SC 17511 (respondent father).

*Cheryl A. Juniewic*, for the appellant in Docket No. SC 17512 (respondent mother).

*John Tucker*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Paula D. Sullivan* and *Susan T. Pearlman*, assistant attorneys general, for the appellee (petitioner).

*David T. Stone*, for the minor children.

*Christina D. Ghio* and *Martha Stone* filed a brief for the Center for Children's Advocacy, Inc., et al. as amici curiae.

*Opinion*

KATZ, J. The principal issue in this certified appeal is whether parents who are respondents to a termination of parental rights petition have standing to assert the constitutional rights of their children who are the subject of the termination action. Specifically, we must consider whether parents have standing to assert a claim that their children were denied their constitutional right to conflict free representation in the termination proceeding because the children were denied the appointment of an attorney to advocate for their express wishes during the termination proceeding. We conclude that parents have standing to assert such claims. We further determine that, even if we were to assume without deciding that such a constitutional right exists, the factual record must reflect that there was an apparent conflict between the wishes of the children and the position advocated by their attorney. Because, in the present case, the record is not adequate to establish such a conflict, we do not reach the substantive issues inherent in such a claim.

The record reveals the following undisputed facts. The petitioner, the commissioner of children and families (commissioner), sought to terminate the parental rights of the respondents, Anthony M. and Jessica C., with respect to their three minor children, Christina M., Lynndora M. and Betty Ann M., alleging that the respondents, who had been found to have neglected the children, were unable or unwilling to benefit from the reunification efforts of the department of children and families (department) and that, accordingly, their parental rights should be terminated pursuant to General Statutes § 17a-112 (j) (3) (B) (ii). The trial court

appointed separate counsel for the respondent mother and father, as well as counsel for the respondents' children, as required under General Statutes § 46b-129a (2).[1] During the three day evidentiary hearing on the petitions, the attorney representing the respondents' children supported the position of the commissioner that termination of the respondents' parental rights was in the best interest of the children.[2] Although the trial court acknowledged the mutual love between the respondents and their children, it found that the com-

---

[1] General Statutes § 46b-129a provides in relevant part: "In proceedings in the Superior Court under section 46b-129 . . . (2) a child shall be represented by counsel knowledgeable about representing such children who shall be appointed by the court to represent the child and to act as guardian ad litem for the child. The primary role of any counsel for the child including the counsel who also serves as guardian ad litem, shall be to advocate for the child in accordance with the Rules of Professional Conduct. When a conflict arises between the child's wishes or position and that which counsel for the child believes is in the best interest of the child, the court shall appoint another person as guardian ad litem for the child. The guardian ad litem shall speak on behalf of the best interest of the child and is not required to be an attorney-at-law but shall be knowledgeable about the needs and protection of children. In the event that a separate guardian ad litem is appointed, the person previously serving as both counsel and guardian ad litem for the child shall continue to serve as counsel for the child and a different person shall be appointed as guardian ad litem, unless the court for good cause also appoints a different person as counsel for the child. No person who has served as both counsel and guardian ad litem for a child shall thereafter serve solely as the child's guardian ad litem. The counsel and guardian ad litem's fees, if any, shall be paid by the parents or guardian, or the estate of the child, or, if such persons are unable to pay, by the court . . . ."

[2] The transcript of the trial court's oral decision reflects its understanding of the position of the attorney representing the respondents' children as follows: "The attorney for the children supports termination of parental rights and adoption. The attorney indicated that he supported this reluctantly because there was no agreement or promise of direct contact between the parents and the [children] and more importantly, between the [children] and their baby brother, although the foster mother [who had taken custody of the children after they had been removed from the respondents' home] testified that she would consider doing what was necessary for the best interest of the [children]." As the trial court's comment indicates, the respondents had another child who was born and who remained in their custody after the three older children were removed from the respondents' home.

missioner had proven her allegations and, accordingly, rendered judgments terminating the respondents' parental rights.

In their appeals to the Appellate Court from the judgments terminating their parental rights, the respondents raised the following three issues. First, they challenged the validity of the trial court's findings that the commissioner had presented clear and convincing evidence to establish, in accordance with § 17a-112 (j), that, despite efforts by the department to improve the respondents' ability to provide proper care for their daughters, the parents had not achieved sufficient rehabilitation.[3] Second, the respondents faulted the trial court for having failed to appoint, on its own initiative, not only an attorney to represent the children's legal rights, but also a guardian ad litem to advocate for their best interests. Finally, the respondent father claimed that, as a matter of law, in order to protect the procedural due process rights of economically disadvantaged parents, under

[3] In their appeal to the Appellate Court, the respondents did not challenge the accuracy or completeness of the evidence on which the trial court had relied to conclude that the commissioner had established, by clear and convincing evidence, the § 17a-112 (j) (3) (B) (ii) requirements for termination of parental rights. Rather, they claimed that the trial court's findings were clearly erroneous because the court had failed to consider the special problems caused by their poverty, their cognitive limitations and their responsibility to provide care for their minor son. See footnote 2 of this opinion. With respect to the trial court's finding that they had failed to rehabilitate themselves, the parents claimed that the court should have attached greater weight to evidence that showed that they had created a safe environment for all of their children and that their limited parental resources should not have been a consideration in deciding disputes about parental skills. The Appellate Court concluded that it was proper for the trial court to have found "that the commissioner had established, by clear and convincing evidence, that, despite the training in parental skills that the department had provided, the [respondents] did not have the ability to care for their daughters, either at the time of the termination proceedings or in the immediately foreseeable future." *In re Christina M.*, 90 Conn. App. 565, 574–75, 877 A.2d 941 (2005). These determinations are not at issue in this appeal.

article first, §§ 8 and 10, of our state constitution, courts must require proof beyond a reasonable doubt of the grounds for termination of parental rights. The Appellate Court disagreed with each of these claims and affirmed the judgments. *In re Christina M.*, 90 Conn. App. 565, 877 A.2d 941 (2005).

Thereafter, we granted the respondents' petitions for certification to appeal from the Appellate Court, limited to the following issues: "1. Whether the Appellate Court properly concluded that the trial court does not have a constitutional obligation to appoint an independent attorney to advocate for the express wishes of a child, who is the subject of a termination of parental rights petition, when those wishes conflict with the position advocated by the child's present counsel? [and] 2. If the answer to the first question is 'no,' whether deprivation of that right by an attorney who advocates a position contrary to the express wishes of the child causes 'structural error' in a termination proceeding creating a presumption of prejudice?" *In re Christina M.*, 276 Conn. 903, 884 A.2d 1024 (2005).

The respondents contend that children subject to a petition for termination of parental rights have a constitutional right to effective assistance of counsel.[4] They further contend that the trial court in the present case had an obligation, sua sponte, to ensure that there was no conflict between the children's legal interest and

[4] The Center for Children's Advocacy, Inc., the Office of the Child Advocate, the National Association of Counsel for Children, the Legal Assistance Resource Center, Connecticut Legal Services, Inc., Greater Hartford Legal Aid, the New Haven Legal Assistance Association, Inc., and the Children's Law Center jointly filed a brief as amici curiae in support of the respondents' contentions that children who are the subject of termination of parental rights proceedings constitutionally are entitled to conflict free representation and that when the court has reason to believe that the attorney for the child is not advocating for the expressed wishes of the child, the court has an obligation sua sponte to determine whether the attorney is acting in accordance with the Rules of Professional Conduct.

their best interest because there was evidence in the record that the children's attorney was not advocating for the expressed wishes of the children. In response, the commissioner contends that this court should not consider the respondents' claim because they lack standing to assert the constitutional rights of their children. The commissioner further contends that the right of children to representation by counsel in termination proceedings is statutory, not constitutional, but even if such a right exists, the record is inadequate to demonstrate that the position advocated by the children's attorney reflected a conflict of interest. We conclude that we cannot address the merits of the certified questions because, although the respondents have standing to assert their claim, the record does not reflect that there was a conflict of interest that would implicate the effectiveness of the children's representation.

I

Before addressing the merits of the respondents' claims, we first must consider the commissioner's assertion that the respondents lack standing to raise these issues. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Internal quotation marks omitted.) *Frillici* v. *Westport*, 264 Conn. 266, 280, 823 A.2d 1172 (2003).

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the . . . decision has specially and injuriously affected that specific personal or legal interest. . . . Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Missionary Society of Connecticut* v. *Board of Pardons & Paroles*, 278 Conn. 197, 201–202, 896 A.2d 809 (2006).

Although this court previously has not addressed standing in this context, the issue of a parent's standing to raise concerns about his or her child's representation is an issue with which the Appellate Court has had some familiarity. In *In re Shaquanna M.*, 61 Conn. App. 592, 593–94, 767 A.2d 155 (2001), the primary issue was whether the respondent mother, whose parental rights with respect to her three sons had been terminated, had been denied procedural due process when the trial court denied her motion for a mistrial or, alternatively, for a continuance, made during the course of trial, based on the death of the attorney whom the court had appointed as both counsel and guardian ad litem for

her sons.[5] The respondent mother challenged that decision in her appeal from the judgments terminating her parental rights, and the commissioner had claimed that the respondent lacked standing to pursue a claim that the denial of her motion for a continuance violated due process. Id., 597. Acknowledging that no statute gave the respondent the specific right to seek the remedy of a mistrial or a continuance because of the death of the counsel or guardian ad litem for her children, she claimed classical aggrievement, contending that she had a colorable claim of a direct injury, which was peculiar and personal to her, that she was likely to suffer by the denial of her motion. Id., 597–98.

In addressing the issue of standing, the Appellate Court first identified the competing interests at stake: the freedom of personal choice in matters of family life, which is a fundamental liberty interest protected by the fourteenth amendment; and the state's interest in preserving and promoting the welfare of a child. Id., 598, citing *Santosky* v. *Kramer*, 455 U.S. 745, 753, 766, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). The Appellate Court then noted that, "[t]he desire and right of a parent to maintain a familial relationship with a child cannot

---

[5] In *In re Shaquanna M.*, supra, 61 Conn. App. 596, the Appellate Court noted that, at the hearing on the respondent mother's motion for a continuance, the substitute attorney and guardian ad litem for the respondent's sons stated his position opposing the respondent's motion as follows: "I have an obligation, I think, a legal professional obligation, to represent these children competently. It's difficult calculus in this case based on the information that I have. If I felt in doing the calculus, if I felt the need, it's a close call in my view. And in some technical sense I would have loved to have been able to read through the transcript, however, with all the other information I've been able to look at and the investigation I've done into the matter, I don't believe it would serve the best interest of these children to prolong the matter at all. I mean that's the bottom line for me. . . . I don't think it's absolutely essential that I review the trial transcripts up to this point to fulfill my obligation to represent these children competently." (Internal quotation marks omitted.)

be separated from the desire and best interest of a child either to maintain or to abandon that relationship, or the interest of the state in safeguarding the welfare of children"; *In re Shaquanna M.*, supra, 61 Conn. App. 598; and that, in resolving the struggle between parents and the state to determine what is in the child's best interest, with the child being the focus of the struggle, "[i]t is difficult to separate the right to federal due process of the respondent from those of her children." Id., 599. Recognizing that the respondent mother had a stake in the outcome of her motion for a continuance because the trial court's action on that motion could affect the course of the trial and, ultimately, whether her rights as a parent would be terminated, the court made the following determination: "At stake was the possible or probable direct injury to her of her right to retain her status as a mother. It is hard to understand how she could be more specially involved. The inadequate representation of her children by an attorney or guardian ad litem could, at the very least, colorably harm her. A colorable claim of direct injury to her that she may suffer or is likely to suffer gives her standing. . . . Inadequate representation of her children in the capacity of guardian ad litem could particularly harm her because it is in that capacity that the best interests of her children must be determined. A mother has standing to challenge a ruling that involves an alleged interference with her status as a parent." (Citation omitted.) Id., 599–600. Accordingly, the court held that the respondent had standing to pursue her claim that her motion for a continuance should have been granted. Id., 600; see also *In re Brendan C.*, 89 Conn. App. 511, 520 n.4, 874 A.2d 826 (relying on *In re Shaquanna M.* for conclusion that respondent parent had standing to raise claim, on behalf of child, that child had received inadequate representation in termination proceeding), cert. denied, 274 Conn. 917, 879 A.2d 893, cert. denied, 275 Conn. 910, 882 A.2d 669 (2005).

Indeed, it is beyond dispute that, "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme Court]." *Troxel* v. *Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); see *Meyer* v. *Nebraska*, 262 U.S. 390, 399, 401, 43 S. Ct. 625, 67 L. Ed. 1042 (1923) (liberty protected by due process clause includes right of parents to establish home and bring up children and to control education of their own); *Pierce* v. *Society of Sisters*, 268 U.S. 510, 534–35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925) (liberty of parents and guardians includes right "to direct the upbringing and education of children under their control"); *Prince* v. *Massachusetts*, 321 U.S. 158, 166, 64 S. Ct. 438, 88 L. Ed. 645 (1944) ("[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder"); *Stanley* v. *Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972) ("[i]t is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this [c]ourt with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements' "); *Wisconsin* v. *Yoder*, 406 U.S. 205, 232, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."); *Quilloin* v. *Walcott*, 434 U.S. 246, 255, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978) ("[w]e have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"); *Parham* v. *J. R.*, 442 U.S. 584, 602, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979) ("Our

jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course."); *Santosky* v. *Kramer*, supra, 455 U.S. 753 (discussing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child"). Thus, in the present action, both the respondents and the children have a mutual interest in the preservation of family integrity, and the termination of parental status is irretrievably destructive of that most fundamental family relationship.

This case does not implicate merely the inability of the respondents' children to raise their *own* claims, such that we must consider whether the respondents have standing to vindicate their children's rights on that basis. See *Powers* v. *Ohio*, 499 U.S. 400, 411, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) (criminal defendants may assert equal protection rights of potential jurors whose equal protection rights have been violated by discriminatory jury selection). Rather, the respondents have a direct, personal stake in the outcome of the termination proceeding. See *In re Elizabeth M.*, 232 Cal. App. 3d 553, 565, 283 Cal. Rptr. 483 (1991) ("father has standing to assert his child's right to independent counsel, because independent representation of the children's interests impacts upon the father's interest in the parent-child relationship"). Theirs is not an abstract concern.[6] Inadequate representation of the children, either

---

[6] The commissioner relies on several dissolution cases in support of her contention that the respondents lack standing to bring the present claim. In our view, these cases do not support the commissioner's position under the facts of the present case. For example, the commissioner cites *Strobel* v. *Strobel*, 64 Conn. App. 614, 781 A.2d 356, cert. denied, 258 Conn. 937, 786 A.2d 426 (2001), wherein the Appellate Court held that the defendant parent lacked standing to seek disqualification of the child's counsel. Although the *Strobel* court cited the rule that, "*[g]enerally*, the defendant [parent] has no standing to raise a claim on behalf of her child"; (emphasis added) id., 620; it noted that, in the case before it, "[t]he defendant did not claim that her request was made to prevent prejudice to her own case." Id. Similarly,

as a guardian ad litem or as their counsel, could harm the respondents because those roles help shape the court's view of the best interests of the children, which serves as the basis upon which termination of parental rights is determined. See General Statutes §§ 17a-112 (j) and 45a-132 (b).

The impact of the representation of children on their parents' interest in the termination proceeding and vice versa was acknowledged in *Wright* v. *Alexandria Division of Social Services*, 16 Va. App. 821, 825, 433 S.E.2d 500 (1993), cert. denied, 513 U.S. 1050, 115 S. Ct. 651, 130 L. Ed. 2d 555 (1994), wherein the Virginia Court of Appeals determined that the minor child who was the subject of the state's termination petition had standing to raise the issue of whether her mother's constitutional rights had been violated because the child's rights directly were involved in view of the fact that termination of the parent-child relationship was at stake. "A party has standing in a case if he or she allege[s] such a *personal stake in the outcome of the controversy* as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions. . . . In cases involving parental rights, the rights of the child coexist and are intertwined

in *Lord* v. *Lord*, 44 Conn. App. 370, 375–76, 689 A.2d 509, cert. denied, 241 Conn. 913, 696 A.2d 985 (1997), cert. denied, 522 U.S. 1122, 118 S. Ct. 1065, 140 L. Ed. 2d 125 (1998), the Appellate Court concluded that the parent had lacked standing to assert a claim on behalf of the child, in the absence of any assertion that the claimed impropriety had prejudiced the parent's own case, and contrasted the facts before it with its decision in *Schult* v. *Schult*, 40 Conn. App. 675, 687 n.10, 672 A.2d 959 (1996), aff'd, 241 Conn. 767, 699 A.2d 134 (1997), wherein the court had found standing on the basis of the parent's claim that the alleged impropriety prejudiced her own case. As we have stated throughout this opinion, the respondents involved herein had a personal stake in the preservation of family integrity, and because parental status termination is irretrievably destructive of that fundamental family relationship, they have an interest that may be prejudiced by the outcome of the termination proceeding.

with those of the parent. The legal disposition of the parent's rights with respect to the child necessarily affects and alters the rights of the child with respect to his or her parent. [The child] ha[d] a personal stake in the outcome of the proceeding to terminate her mother's parental rights and, therefore, ha[d] standing to challenge the propriety of the trial judge's decision to terminate those rights."[7] (Citations omitted; emphasis in original; internal quotation marks omitted.) Id.

Similarly, in the present case, the rights of the respondents are inextricably intertwined with those of their children. The ruling at issue involves irrevocable interference with their status as parents, and the legal disposition of their rights in the proceeding necessarily could affect and alter the rights of the respondents with respect to their parental rights. We, therefore, conclude that the respondents have standing to raise their claim before this court.

II

We now address the respondents' claim. They contend that, when a trial court has reason to believe that an attorney for a minor child is not advocating for that child's expressed wishes, the court has an independent obligation to intervene and conduct an inquiry to determine whether the attorney is representing the child in accordance with the Rules of Professional Conduct. The respondents contend that, despite the fact that the trial court had appointed counsel for the children pursuant to § 46b-129a; see footnote 1 of this opinion; their daughters did not receive the benefit of the conflict free legal representation to which they *constitutionally*

---

[7] The Virginia Court of Appeals concluded, however, notwithstanding that the child had standing to raise her mother's constitutional right to effective assistance of counsel, that the child had not provided the court with evidence or any basis on which it could determine that her mother had not received effective assistance of counsel. *Wright* v. *Alexandria Division of Social Services,* supra, 16 Va. App. 826.

were entitled. Because the children's attorney had agreed with the commissioner that the parental rights of the respondents should be terminated despite, according to the respondents, the expressed wishes of the children to remain with their parents, there existed a conflict of interest that constitutionally required the trial court sua sponte to appoint independent counsel to advocate in accordance with the children's wishes. We conclude that the record in this case does not support the existence of a conflict of interest as claimed by the respondents.

Inherent in the respondents' claim are several layers of significant constitutional issues, beginning with the most fundamental one of whether children who are the subject of a termination proceeding have a federal and state constitutional right to counsel in addition to the statutory right established by the legislature in § 46b-129a. The respondents contend that, because such a constitutional right to counsel exists, it was incumbent upon the trial court in this case to recognize that the obligation of the children's counsel to abide by his or her client's decisions concerning the objectives of representation; see Rules of Professional Conduct 1.2 (a); was not being met and that the court needed to intercede.[8]

Although the parties do not analogize to the criminal context, because the respondents claim that the children's right to representation is of constitutional dimension, as it is in the criminal context, it is useful to

---

[8] It is unclear, based on a comparison of the briefs and oral argument to this court and the Appellate Court opinion, whether the respondents are claiming that the children had been denied their constitutional right to effective legal representation because their attorney did not represent their wishes or that the trial court was obligated to appoint a guardian ad litem to advocate for their best interests as well as an attorney to represent their legal rights. Because we conclude that the record was insufficient to alert the trial court that there was a conflict between the children and the attorney then representing them, we need not resolve this uncertainty.

examine the requirements for demonstrating conflict free representation of counsel in that context. In other words, we presume that, should such a constitutional right exist in the termination of parental rights context, the requirements for establishing a violation would, at a minimum, be comparable to those applied to establish the violation in the criminal context. "The sixth amendment to the United States constitution, as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut constitution both guarantee a defendant the right to effective assistance of counsel in a criminal proceeding. . . . Where a constitutional right to counsel exists, our [s]ixth [a]mendment cases hold that there is a correlative right to representation that is free from conflicts of interest. . . . Moreover, one of the principal safeguards of this right is the rule announced by this court that [a trial] court must explore the possibility of a conflict . . . when it knows or reasonably should know of a conflict . . . .

"There are two circumstances under which a trial court has a duty to inquire with respect to a conflict of interest: (1) when there has been a timely conflict objection at trial . . . or (2) when the trial court knows or reasonably should know that a particular conflict exists . . . . A trial court's failure to inquire in such circumstances constitutes the basis for reversal of a defendant's conviction. . . . In the absence of an affirmative duty by the trial court to inquire, however, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his [or her] lawyer's performance in order to obtain reversal of his [or her] conviction. . . . Before the trial court is charged with a duty to inquire, the evidence of a specific conflict must be sufficient to alert a reasonable trial judge that the defendant's sixth amendment right to effective assistance of counsel is in jeopardy. . . .

"It is firmly established that a trial court is entitled to rely on the silence of the defendant and his attorney, even in the absence of inquiry, when evaluating whether a potential conflict of interest exists. . . . [D]efense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. Absent special circumstances, therefore, trial courts may assume either that [the potentially conflicted] representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. . . . [T]rial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel. An attorney [facing a possible conflict] in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Gaines*, 257 Conn. 695, 706–709, 778 A.2d 919 (2001). Accordingly, it is a high threshold that must be satisfied before the trial court affirmatively must inquire as to whether a conflict exists.

We conclude that, drawing on the constitutional right to conflict free representation in the criminal context, the record in the present case is insufficient to support a determination that the trial court knew or reasonably should have known that a conflict existed between what the respondents' children wanted and what their attorney advocated. We therefore leave resolution of the significant issues raised by the respondents for another day.

We view the adequacy of the record through the lens of § 46b-129a, which acknowledges and addresses the tension between the dual roles imposed upon the attorney appointed to represent children who are at risk of removal from their parents and who are entitled to

and need the assistance of counsel.[9] Section 46b-129a authorizes a court initially to appoint an attorney who will serve the dual roles of advocate and guardian ad litem for a child. The statute provides in relevant part: "[A] child shall be represented by counsel knowledgeable about representing such children who shall be appointed by the court to represent the child and to act as guardian ad litem for the child. The primary role of any counsel for the child including the counsel who also serves as guardian ad litem, shall be to advocate for the child in accordance with the Rules of Professional Conduct. When a conflict arises between the child's wishes or position and that which counsel for the child believes is in the best interest of the child, the court shall appoint another person as guardian ad litem for the child. The guardian ad litem shall speak on behalf of the best interest of the child and is not required to be an attorney-at-law but shall be knowledgeable about the needs and protection of children. In the event that a separate guardian ad litem is appointed, the person previously serving as both counsel and guardian ad litem for the child shall continue to serve as counsel for the child and a different person shall be appointed as guardian ad litem, unless the court for good cause also appoints a different person as counsel for the child. No person who has served as both counsel and guardian ad litem for a child shall thereafter serve solely as the child's guardian ad litem. . . ." General Statutes § 46b-129a (2).

Although there is often no bright line between the roles of a guardian ad litem and counsel for a minor

---

[9] In *Ireland* v. *Ireland*, 246 Conn. 413, 438–39, 717 A.2d 676 (1998), we explored the tension between the dual roles imposed upon the attorney appointed to represent children who are at risk of removal from their parents and are entitled to and need the assistance of counsel. Subsequently, that issue was addressed by the General Assembly in Public Acts 2001, No. 01-148, § 1, when it amended § 46b-129a (2) to make express the independent obligations of an attorney and a guardian ad litem when a conflict arises between the wishes of the child and the best interests of the child.

child, the legal rights of a child may be distinct from the child's best interest. When the roles do overlap, "it is only because, in such cases, the rights of a child and the child's best interest coincide. While the best interest of a child encompasses a catholic concern with the child's human needs regarding his or her psychological, emotional, and physical well-being, the representation of a child's legal interests requires vigilance over the child's legal rights. Those legal rights have been enumerated as the right to be a party to a legal proceeding, the right to be heard at that hearing and the right to be represented by a lawyer. When both a guardian ad litem and an attorney have been appointed for a child, their respective roles and the duties attendant to those roles should adhere to that basic distinction. Specifically, the guardian ad litem should refrain from acting as a second attorney for the child. Just as it is not normally the province of the attorney to testify, it is not the province of the guardian ad litem to file briefs with the court." *In re Tayquon H.*, 76 Conn. App. 693, 706–707, 821 A.2d 796 (2003). Generally speaking, then, counsel bears responsibility for representing the legal interest of a child while a guardian ad litem must promote and protect the best interest of a child.

The respondents recognize that, as a general matter, counsel, rather than the court, has the responsibility for requesting the appointment of a guardian ad litem. See American Bar Association/National Association of Counsel for Children, Revised Standards of Practice for Lawyers Who Represent Children in Abuse and Neglect Cases (1999), standard B-2 (1) and accompanying commentary. They further acknowledge that, when counsel perceives that his or her role is in conflict with the child's actual best interest, he or she has an obligation to bring that conflict to the court's attention, and the court, in turn, must appoint a separate guardian ad litem to protect and to promote the child's best interests. See

id., standards B-2 (1) and B-4 (4) and accompanying commentaries. Because in this case the children's counsel failed to ask the trial court to take any action, the respondents must look to the trial court itself, claiming that its failure to appoint an independent attorney or a guardian ad litem; see footnote 1 of this opinion; on the court's own initiative, resulted in a clear violation of their daughters' constitutional rights. As we have stated, there are two circumstances implicating the constitutional right to conflict free representation in the criminal context under which a trial court has a duty to inquire with respect to a conflict of interest: when there has been a timely conflict objection at trial or when the trial court knows or reasonably should know that a particular conflict exists.

Even were we to assume that the children had a constitutional right, in addition to the statutory right under § 46b-129a, to conflict free representation, and that the trial court had the obligation to act, sua sponte, if the court knew or reasonably should have known that a particular conflict existed, the record in this case does not support the respondents' claim that the trial court knew or should have known that a conflict existed. The only evidence that there was a conflict between the wishes of *any* of the children and their attorney's position at trial pertained to the respondents' eldest daughter, Christina M., and involved representations she had made to the court-appointed psychologist, Michael Haynes, in the course of a clinical interview contained in a January 17, 2003 psychological evaluation, almost eleven months prior to trial, when she was approximately six and one-half years old. As reflected in Haynes' report, Christina, who at that time had no memories of any abuse or violence she had experienced in the respondents' home and who was living with foster parents with whom she could not remain, stated that her wishes were to "go home with mommy and daddy"

and for "mommy and daddy to take care of us." Christina also had drawn a picture placing her parents in the smallest of three concentric circles that was to signify the people who are "the most important people in her life" and whom "she could not imagine living without." At the time of trial, however, in December, 2003, Christina's then foster mother, with whom the respondents' children had been living for the six and one-half months prior to trial and who was anxious to adopt Christina and her sisters, testified that Christina had told her and her husband that she wanted to live with them forever. Accordingly, although the trial court acknowledged that the record reflects the mutual love between the children and the respondents, the record is insufficient to support a determination that the trial court knew or reasonably should have known that a particular conflict existed between what Christina wanted at the time of trial and what her attorney had advocated.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.