******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE OREOLUWA O.*
(AC 36845)

Gruendel, Alvord and Norcott, Js.

*Argued January 20—officially released May 20, 2015***

(Appeal from Superior Court, judicial district of New Haven, Juvenile Matters, Mosley, J.)

*James P. Sexton*, assigned counsel, with whom was *Michael S. Taylor*, for the appellant (respondent father).

*Michael Besso*, assistant attorney general, with whom were *Jessica B. Gauvin*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

ALVORD, J. The respondent father, Olusegun O., appeals from the judgment of the trial court terminating his parental rights with respect to his minor son, Oreoluwa O.[1] On appeal, he argues that it was clear error for the trial court to determine that (1) the Department of Children and Families (department) made reasonable efforts to reunify him with Oreoluwa, (2) the respondent abandoned Oreoluwa, and (3) the respondent had no ongoing parent-child relationship with Oreoluwa. He also claims, on behalf of Oreoluwa, that the guarantee of due process under the fourteenth amendment to the United States constitution required the trial court to provide the respondent with notice of alternative means of participation in the termination trial and required the court to undertake reasonable efforts to use those alternative means. We affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to the disposition of this appeal. The respondent, together with his wife, Oreoluwa's mother,[2] live in Nigeria. Oreoluwa's mother traveled to the United States while pregnant for the purpose of birthing Oreoluwa in this country. Prior to his birth, it was determined that he suffered significant congenital heart defects, and he was diagnosed with several complex heart conditions after he was born. Initially, he was released from the hospital to his mother's care, and the two lived with a family in Milford for a short time after his birth before moving into a hotel. In mid-April, 2013, when he was approximately three months old, Oreoluwa was readmitted to the hospital, where medical personnel observed his mother behaving erratically and having difficulty administering his medications.

On May 3, 2013, the petitioner, the Commissioner of Children and Families (commissioner), sought from the court an order of temporary custody and filed a neglect petition as to Oreoluwa. The commissioner alleged that Oreoluwa was neglected in that he was being denied proper care and was being permitted to live under conditions injurious to his wellbeing, and that he was uncared for in that his home could not provide the specialized care that he required. Oreoluwa was adjudicated neglected and committed to the custody of the commissioner. The court approved specific steps for the respondent to take so he could be reunited with Oreoluwa. On December 23, 2013, the commissioner filed a petition for the termination of the respondent's parental rights regarding Oreoluwa on the grounds that (1) the child had been abandoned by the respondent in the sense that he failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child, and (2) there was no ongoing parent-child relationship with the respondent "that ordi-

narily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral, and educational needs of the child . . . and [that] to allow further time for the establishment or reestablishment of the parent-child . . . relationship would be detrimental to the best interests of the child . . . ." On February 27, 2014, the court entered a default as to the respondent because of his failure to appear at the plea hearing. The mother had previously been defaulted.[3]

The hearing on the termination of parental rights petition was held on March 12, 2014. On March 20, 2014, the court rendered an oral decision terminating the parental rights of the respondent. The respondent subsequently filed a motion for reargument and reconsideration, which was denied. On June 14, 2014, the respondent filed this appeal. The respondent also filed a motion for articulation of the decision to terminate parental rights, which was denied. The respondent filed a motion for review with this court, which granted the motion. On October 10, 2014, the trial court issued its articulation.

The court found by clear and convincing evidence pursuant to General Statutes § 17a-112 (j) (1) that the department made reasonable efforts to reunify Oreoluwa with the respondent given the circumstances. The court noted that "the father's absence from the state, and indeed from this country, has limited the type and number of services that the department has been able to provide to him. When a parent is not available to participate in services, the reasonableness of the department's efforts must be judged in that context." The court explained that although the department was not able to provide him services, it had provided him with contact information for the Nigerian consulate in New York, maintained communication with him, investigated a possible placement resource for Oreoluwa suggested by the respondent, and attempted, although unsuccessfully, to set up visitation via Skype.

The court further found by clear and convincing evidence that the respondent abandoned Oreoluwa pursuant to § 17a-112 (j) (3) (A) and that there was no ongoing parent-child relationship between the respondent and Oreoluwa pursuant to § 17a-112 (j) (3) (D). As to abandonment, the court found that the respondent did make some inquiry as to how he could contribute financially to Oreoluwa's care, but when asked for documentation of his income in order to establish an appropriate child support amount, the respondent did not respond. The court further found that the respondent has not "expressed [his] love and affection to the child on a consistent and continuing basis; [he has] not supplied him with the food, clothing, and medical care that he needs; nor [has he] provided him with an adequate domicile or furnished him with social and religious guidance. [His] absence from this country does not excuse

[him] from doing all that [he] could do to demonstrate a reasonable degree of interest, concern and responsibility for Oreoluwa, given the circumstances."

After finding that the allegations of the petition were proven by clear and convincing evidence, the court then determined whether termination was in the best interest of Oreoluwa. The court considered the seven statutory factors and made written findings as to each factor pursuant to § 17a-112 (k). The court ultimately concluded that there was clear and convincing evidence that it was in Oreoluwa's best interest to terminate the respondent's parental rights. It is from this decision that the respondent appeals.

"We begin by setting forth the statutory requirements for granting a petition for the termination of parental rights. A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . If the trial court determines that a statutory ground for termination exists [by clear and convincing evidence], it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interest of the child. . . .[4]

"Our standard of review on appeal from a termination of parental rights is limited to whether the challenged findings are clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Citation omitted; footnote added; internal quotation marks omitted.) *In re Mindy F.*, 153 Conn. App. 786, 791–92, 105 A.3d 351 (2014), cert. denied, 315 Conn. 913, 106 A.3d 306 (2015).

I

The respondent first argues that the court's finding that the department made reasonable efforts to reunify him with Oreoluwa was clearly erroneous. We disagree.

"In order to terminate parental rights under § 17a-112 (j), the department is required to prove, by clear and convincing evidence, that it has made reasonable efforts . . . to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from reunification . . . . General Statutes § 17a-112 (j) (1)." (Internal quotation marks omitted.) *In re Melody L.*, 290 Conn. 131, 144, 962 A.2d 81 (2009), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 746–47, 91 A.3d 862 (2014). "The reasonableness of the department's efforts must

be assessed in the context of each case. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . [R]easonableness is an objective standard . . . and whether reasonable efforts have been proven depends on the careful consideration of the circumstances of each individual case." (Internal quotation marks omitted.) *In re Kyara H.*, 147 Conn. App. 855, 872–73, 83 A.3d 1264, cert. denied, 311 Conn. 923, 86 A.3d 468 (2014).

The respondent's argument consists of identifying actions he claims that the department should have taken in order to satisfy the reasonable efforts requirement. Specifically, he argues that the department failed to (1) provide him with immigration counsel, (2) facilitate Skype visitation, (3) investigate the possibility of reunification in Nigeria, and (4) establish a reunification plan that he would be able to satisfy.[5]

We do not agree that the department was required to provide the services which the respondent argues were necessary to satisfy the reasonable efforts requirement. First, the respondent argues that the department's failure to provide him with immigration counsel "ma[de] it virtually impossible for [the] respondent to obtain a visa and become reunified with his son in the [United States] . . . ." As the petitioner notes, the respondent fails to point to any authority to support his contention that the department was required to provide him with immigration counsel, and we are likewise not aware of any such authority.[6] The department did, however, provide the respondent or his attorney with the contact information for the Nigerian consulate in New York.

Second, with regard to Skype visitation, the court found that the department's representatives investigated the possibility of utilizing this computer based, video-chatting service; however, it was subsequently determined that the computers at the department were not yet equipped to run the service, and Oreoluwa's foster parents declined to allow the use of their personal computer for this video-chatting purpose. Third, concerning the respondent's claim that the department failed to investigate the possibility of reunification in Nigeria, the court found that as of December, 2013, Oreoluwa was not medically able to travel to Nigeria, and he had not been cleared to travel as of the date of the trial. " '[T]he law does not require a useless and futile act' "; *In re Kyara H.*, supra, 147 Conn. App. 873; and the exploration of reunification in Nigeria would have been futile in light of Oreoluwa's medical inability

to travel there. Finally, the respondent argues that the reunification plan implemented by the petitioner guaranteed failure, because it required the respondent to travel to the United States to visit with Oreoluwa and establish himself here for an unspecified period of time. We cannot conclude that the department's plan to implement reunification efforts in this country rendered its efforts unreasonable, especially in light of the medical circumstances surrounding Oreoluwa's inability to travel.

The department maintained communication with the respondent via e-mail and telephone calls, and, when the respondent indicated a possible placement resource for Oreoluwa with an attorney in Philadelphia, the department contacted the potential resource. The department was later informed by the father, however, that he no longer wished for the potential placement resource to be involved. Although the respondent argues that these efforts by the department did not actually relate to reunification, we conclude that under the circumstances of the present case, the actions taken by the department were reasonable and related to reunification.

Each of the foregoing findings of the court related to the reasonableness of the department's efforts was adequately supported by evidence in the record. The court further found that the respondent's absence from the country prevented the department from being able to provide him with any services. The reasonableness of the department's efforts must be assessed in light of this key finding. See *In re Anvahnay S.*, 128 Conn. App. 186, 194–95, 16 A.3d 1244 (2011) (trial court's finding of reasonable efforts was not clearly erroneous where the respondent's incarceration prevented the department from providing him with services, but it did provide him with visits, encourage him to use the services available to him through the Department of Correction, and told him to notify the department when he was transferred to a halfway house so it could arrange community based services, which he did not do). Under the facts of this case, we decline the respondent's invitation to "explore and clarify the outlines of [the] petitioner's responsibility in a case where the parents reside in a foreign country." Accordingly, our review of the record leads us to conclude that the trial court's finding that the department made reasonable efforts to reunify Oreoluwa with the respondent was not clearly erroneous.

## II

The respondent next claims that the court's findings that he abandoned Oreoluwa and that he had no ongoing parent-child relationship with Oreoluwa were clearly erroneous. On the basis of our review of the record, we conclude that the court's findings as to abandonment were not clearly erroneous. Establishment of only one ground is necessary to terminate parental rights,

and we thus decline to consider the respondent's claim as to the ground of no ongoing parent-child relationship.[7]

"A parent abandons a child if the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . . Abandonment focuses on the parent's conduct. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . . Section 17a-112 [(j) (3) (A)] does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern." (Internal quotation marks omitted.) *In re Justin F.*, 137 Conn. App. 296, 301–302, 48 A.3d 94, cert. denied, 307 Conn. 913, 53 A.3d 997 (2012). "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." (Internal quotation marks omitted.) *In re Jermaine S.*, 86 Conn. App. 819, 840, 863 A.2d 720, cert. denied, 273 Conn. 938, 875 A.2d 43 (2005).

The respondent's argument is premised on the notion that he did nothing to create the separation or lack of parental involvement, and thus his parental rights cannot be terminated under the "fault" ground of abandonment. See *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 669, 420 A.2d 875 (1979). He claims that "[t]he situation was caused by three circumstances outside of [the] respondent's control: (1) his wife legally traveled to Connecticut shortly before her due date and chose to remain . . . here for the birth because of the precarious health of her unborn son; (2) Oreoluwa was unable to travel because of his medical condition; and (3) respondent was unable to obtain a visa." He argues that he "undertook numerous steps, each of which was reasonable under the long-distance circumstances, to display his paternal affection," including that he "attempted to visit, but was repeatedly prevented from doing so by immigration laws . . . 'very early on' asked to Skype with his son, but [the] petitioner failed to honor that request . . . called or emailed [the] petitioner at least once a week to inquire about his son's case . . . requested specific information about his son's health . . . offered to provide financial support for his son's care . . . [and] offered thoughts on 'the best option" for resolving the situation, and offered to *relocate his entire family, including his two other children*, to best serve Oreoluwa's interest." (Citations omitted; empha-

sis in original.)[8]

The court appropriately recognized that the respondent had "demonstrated some degree of interest in and concern for the welfare of Oreoluwa," in that he had maintained communication with the department and had inquired into providing financial support. "The statutory standard [however] is not whether the parents have shown *some interest* in their children." (Emphasis in original.) *In re Rayna M.*, 13 Conn. App. 23, 36, 534 A.2d 897 (1987). The court took account of the respondent's circumstances, noting that his "absence from this country does not excuse [him] from doing all that [he] could do to demonstrate a reasonable degree of interest, concern and responsibility for Oreoluwa . . . ." Although the department did express that it would be seeking more information internally on how to implement the financial support inquired about by the respondent, the department concurrently asked for additional necessary information from the respondent for the purposes of verifying his and his wife's income in order to establish an amount to be contributed for Oreoluwa's appropriate child support.[9] The respondent failed to follow through and provide this information and, thus, the department could not establish appropriate child support. See *In re Jaime S.*, 120 Conn. App. 712, 733, 994 A.2d 233 (2010) (noting that the respondent father failed to provide financial support), appeal dismissed, 300 Conn. 294, 12 A.3d 566 (2011). The court also found that despite the department's having provided the respondent with information to facilitate the sending of correspondence, cards or gifts to Oreoluwa, the respondent failed to do so.[10]

The evidence presented at trial supported the determination that the respondent was not able to fulfill the general obligations of parenthood. The actions taken by the respondent and his wife led to Oreoluwa's presence in Connecticut absent a caregiver and without a realistic plan to ensure that he would receive proper parental care. See *In re Pedro J. C.*, 154 Conn. App. 517, 535 n.15, 105 A.3d 943 (2014) (noting that the neglect ground of abandonment could have been asserted in the petition, stating that "[t]he respondent's actions in encouraging the petitioner's arduous, illegal journey [from Guatemala to the United States] can be compared to the action of a mother who abandons her children on a doorstep, leaving him dependent on the kindness of strangers, and exposing him to unknown risks without a realistic plan to insure his welfare and protection"). Oreoluwa's medical needs prevented him from traveling to Nigeria. The court received no information that the respondent's situation as a parent "barred from entering the United States" would be changing in the near future, as he reported his visa application to have been denied twice.

Under these extraordinary circumstances, the limited

interest and concern that the respondent showed as to Oreoluwa was not reasonable, and the court did not err in concluding that the respondent had abandoned Oreoluwa. See *In re Drew R.*, 47 Conn. App. 124, 129–30, 702 A.2d 647 (1997) (upholding termination on grounds of abandonment despite the fact that the respondent had at one point sought reunification with the child at the respondent's home in California and had submitted to a home study, but, where, inter alia, his contact with his son was random at best, he had not contributed to the child's support though evidence indicated he was able to contribute a small amount, the respondent only acknowledged birthdays and holidays sporadically and did not often telephone or write inquiring about his son).

### III

The respondent last claims, on behalf of Oreoluwa, that because the respondent is a foreign national parent "barred from entering the United States," the guarantee of due process under the fourteenth amendment required the trial court to "(1) advise him that he could participate in the termination trial via telephone, video-conference, or through the use of reasonable continuances to permit [the] respondent time to review the trial exhibits and transcripts prior to presenting his defense, and (2) take reasonable efforts to use those alternates." The respondent did not raise this claim in the trial court and does not assert this claim on his own behalf. Instead, he claims that he has standing to raise the claim on behalf of Oreoluwa, arguing that it is Oreoluwa's fundamental right to family integrity that was violated by the court's failure to utilize the additional and alternative procedures. In support of his claim, the respondent cites *In re Christina M.*, 280 Conn. 474, 476, 908 A.2d 1073 (2006), and *In re Shaquanna M.*, 61 Conn. App. 592, 595, 767 A.2d 155 (2001). The petitioner argues that the respondent is seeking an unwarranted expansion of current case law, in that "[t]hose cases do not hold . . . that a parent has a general right to invoke the child's interest as the basis to claim some wrong done directly to the parent . . . ." We agree with the petitioner.

Both cases relied on by the respondent address the issue of whether a parent has standing to assert a claim related to the child's representation during the termination proceedings. See *In re Christina M.*, supra, 280 Conn. 476 ("Specifically, we must consider whether parents have standing to assert a claim that their children were denied their constitutional right to conflict free representation in the termination proceeding because the children were denied the appointment of an attorney to advocate for their express wishes during the termination proceeding. We conclude that parents have standing to assert such claims."); *In re Shaquanna M.*, supra, 61 Conn. App. 595 (considering whether

respondent mother had standing on behalf of herself and her children to challenge the denial of her motion for continuance, which motion was made because the lawyer serving as the children's attorney and guardian ad litem had passed away and the respondent mother sought a continuance in order for the newly appointed attorney to receive and review the transcripts of the trial to that point).

Subsequent appellate decisions citing *In re Christina M.* and *In re Shaquanna M.* address issues similar to those raised by the facts in those two cases. See, e.g., *In re Brendan C.*, 89 Conn. App. 511, 519–20 and 520 n.4, 874 A.2d 826 (respondent had standing to bring claim that the child received inadequate representation because the court failed to appoint a guardian ad litem), cert. denied, 274 Conn. 917, 879 A.2d 893, cert. denied, 275 Conn. 910, 882 A.2d 669 (2005); *In re Lyric H.*, 114 Conn. App. 582, 587, 970 A.2d 782, cert. denied, 292 Conn. 921, 974 A.2d 722 (2009) (considering the respondent's claim that the court had a constitutional duty to appoint, sua sponte, a separate guardian ad litem for the child); cf. *In re Melody L.*, supra, 290 Conn. 157 (children had established standing to appeal from the judgments terminating the parental rights of the respondent). The respondent fails to point to any authority indicating that the standing recognized in these cases extends to a claim such as the present one, where the "respondent asserts that his son's fundamental right to family integrity was violated by the use of a judicial process to terminate his father's parental rights that deprived [the] respondent of meaningful notice and an opportunity to be heard." Moreover, claims similar to the present claim have been analyzed in terms of the respondent's interest, rather than the interest of the child. See *In re Jaime S.*, supra, 120 Conn. App. 736 ("The father's third claim is that the court violated his right to due process by denying his motion for a continuance on the second day of trial when the immigration service denied him access to a telephone so he could participate in the trial. We do not agree."). Accordingly, because the respondent improperly brought his claim solely on behalf of Oreoluwa, we decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** May 20, 2015, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court also terminated the parental rights of the respondent mother in the same proceeding. Because the mother has not appealed from that judgment, we refer to the father as the respondent in this opinion. We also note that the attorney for the minor child has filed a statement adopting the position and brief of the petitioner in this appeal.

[2] See footnote 1 of this opinion.

<sup>3</sup> At the start of the trial on the termination petition, the petitioner represented to the court that despite both the mother and the respondent having been defaulted for failure to appear, the petitioner, rather than seeking a default judgment, intended to proceed on the merits of the petition. The petitioner, relying on *In re Natalie J.*, 148 Conn. App. 193, 207–208, 83 A.3d 1278, cert. denied, 311 Conn. 930, 86 A.3d 1056 (2014), notes in her brief that she could have sought a default judgment against the respondent. In *In re Natalie J.*, this court stated that "[c]hild protection proceedings are civil matters. . . . In civil matters [t]he entry of a default constitutes an admission by the defendant of the truth of the facts alleged in the complaint." (Citation omitted; internal quotation marks omitted.) In *In re Natalie J.*, the court noted that when the respondent mother failed to appear, and to contest the neglect petition and the commitment of the child to the petitioner's care, "the court was permitted to take the facts contained in the pleadings and the social study to be true and to rely on those facts in making its decision." Id., 207–208; see also *In re Pedro J. C.*, 154 Conn. App. 517, 521 n.3, 105 A.3d 943 (2014).

In the present case, the court held a hearing on the merits, in which counsel for the mother and the respondent participated. Counsel for the petitioner introduced eight documents as full exhibits without objection and the testimony of a department social work supervisor. Counsel for the respondent introduced two exhibits.

<sup>4</sup> Although the respondent's appellate brief contains a cursory statement in a footnote that he does not concede that termination was in Oreoluwa's best interest, he does not brief this claim nor does he provide any legal analysis. "We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *In re Brianna L.*, 139 Conn. App. 239, 250, 55 A.3d 572 (2012). Thus, we consider this claim abandoned.

<sup>5</sup> The respondent, in two footnotes contained in his appellate brief, argues that the petitioner has failed to fulfill requirements under the Vienna Convention. He fails, however, to provide an analysis as to how any alleged failure to meet requirements under the Vienna Convention would mandate reversal of the judgment terminating his parental rights. "It is well settled that we are not required to review claims that are inadequately briefed." *In re Etta H.*, 146 Conn. App. 751, 756 n.4, 78 A.3d 295 (2013). "We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Nowacki* v. *Nowacki*, 129 Conn. App. 157, 163, 20 A.3d 702 (2011). Accordingly, we decline to address his claim.

<sup>6</sup> Both of the out-of-state decisions relied upon by the respondent for the related proposition that "the state must attempt to resolve immigration issues and reunify the family" are factually distinct from the present case. In both out-of-state cases, the respondent parents, undocumented immigrants, had resided in the United States with their children before either being deported or returning to their native country for the purpose of obtaining a visa.

In *In re Interest of Angelica L.*, 277 Neb. 984, 1005, 767 N.W.2d 74 (2009), the Nebraska Supreme Court explained that it was "faced with deciding whether the children should remain in the United States or be returned to [the mother] in Guatemala." The child in that case was removed from her mother's care due to a neglect allegation, specifically, the mother's failure to take her to a follow-up doctor's visit. Id., 986. The mother was required under the reunification case plan to perform a number of tasks, including, inter alia, keeping a job, maintaining an appropriate residence, and keeping in contact with her children. Id., 991–92. After being deported to Guatemala, the mother sought the assistance of two missionaries, with whom she authorized the Nebraska Department of Health and Human Services to communicate on her behalf. Id., 992–93. The department worker, although admitting that she was unable to monitor the mother's progress because of the mother's location, was of the opinion that the mother had failed to comply with the case plan. Id. The state then filed a motion to terminate her parental rights, which was granted. Id., 993, 999. On appeal, the court determined that the state had not shown that the mother was unfit, and stated that "the evidence presented is that [the mother] would provide adequate medical care for [her children] in Guatemala." Id., 1008. The court noted that the respondent mother generally had complied with her case plan, in that she was employed, had remained in contact with her children, and had established and maintained a suitable home for the children after being deported to Guatemala.

Id., 1011. Also, by the time the respondent mother was deported, the child had recovered from her previous medical ailments and, thus, there was nothing preventing the return of the children to the mother's care in Guatemala. Id., 1010. Thus, that case differs from the present case in that reunification in Nigeria was not a viable option for Oreoluwa because his medical needs prevented him from traveling there.

In *J.B.* v. *DeKalb County Dept. of Human Res*ources, 12 So. 3d 100, 103 (Ala. Civ. App. 2008), the father was the primary caregiver for his children when he was not at work; the mother was incapable of properly parenting the children due to her mental deficiencies. The father, after making arrangements for the care of his children, returned to Guatemala in order to obtain a visa so that he could legally reside in the United States. Id., 103–104. He anticipated returning in sixty days. Id., 104. While he was in Guatemala, the mother advanced her own plans and ended up caring for the children, which led to the removal of the children. Id., 114. After the father was delayed in his efforts to reunite his family, the state filed a petition to terminate his parental rights. Id., 105. The father successfully obtained a two year visa and returned in May, 2007, approximately nine months after he had left. Id., 112. On appeal, the Court of Civil Appeals of Alabama determined that he had not abandoned his children because he called them weekly, and although he did not contribute to their support while he was living in Guatemala, he demonstrated income of only seven or eight dollars a day while he was living there. Id. The court stated that although he was unable to return to the United States, there was no evidence he intentionally withheld his presence, and the court emphasized that he had traveled to Guatemala with the "expectation that he would be gone for no longer than two months." Id. This fact pattern, where the Alabama Department of Human Resources *knew* the father's expected return date, is in contrast with the present case, where there was no information presented to the trial court that the respondent's inability to procure a visa was temporary. Rather, the trial court was confronted with the situation in which the respondent had reported his visa application to have been denied twice.

[7] See *In re Brea B.*, 75 Conn. App. 466, 473, 816 A.2d 707 (2003) ("Because the statutory grounds necessary to grant a petition of termination of parental rights are expressed in the disjunctive, the court need find only one ground to grant the petition. Thus, we may affirm the court's decision if we find that it properly concluded that any one of the statutory circumstances existed."); see also *In re Jeremiah J.*, 140 Conn. App. 641, 643, 59 A.3d 415 ("[p]roof of one ground is sufficient to terminate parental rights" [internal quotation marks omitted]), cert. denied, 308 Conn. 932, 64 A.3d 332 (2013).

[8] The respondent argues that "parents who are prevented from fully caring for their children due to ongoing immigration issues are not ordinarily deemed to have abandoned their children." We agree with the petitioner's argument that the four out-of-state cases cited by the respondent in support of this proposition are distinguishable. See *In re Interest of Mainor T.*, 267 Neb. 232, 255, 674 N.W.2d 442 (2004) (the record contained no specific findings of fact upon which the juvenile court determined that the respondent mother had abandoned her children); *In re B & J*, 279 Mich. App. 12, 19, 756 N.W.2d 234 (2008) (petitioner not entitled to seek termination of respondents' parental rights under statutory provision contemplating failure to provide proper care or custody for the child, where the petitioner, itself, intentionally set out to create that very ground for termination by making only meager efforts to provide the respondents with services when they were present in the country and then reporting them to federal immigration officials resulting in their deportation); *Marina P.* v. *Dept. of Economic Security*, 214 Ariz. 326, 331 n.6, 152 P.3d 1209 (App. 2007) ("[o]n both occasions that Mother was deported, Mother's deportation resulted from the fact that she kept her visitation with her children and [the child protection agency] revealed her scheduled visitation dates to the border patrol"), review denied sub nom. *Marina P.* v. *Ades*, 2007 Ariz. LEXIS 98 (Ariz. September 25, 2007); *In J.B.* v. *DeKalb County Dept. of Human Resources*, 12 So. 3d 100, 105–106 (Ala. Civ. App. 2008) (the respondent father's absence was due to his return to his native country to obtain a visa, and at the time of petition to terminate his parental rights he notified the child protection agency that he would obtain the visa in approximately five months).

[9] The respondent is licensed as a physician in Nigeria. He has a bachelor of science degree in biochemistry, and a bachelor of medicine and surgery degree from Nigerian universities.

[10] The respondent claims that he sent cards and a box of clothing to Oreoluwa. In support of this and other arguments, the respondent cites to

material, contained in the appendices to his briefs to this court, which he concedes was not submitted at trial. The petitioner argues that reliance on such material is improper. Thus, the petitioner filed with this court a motion to strike, arguing that portions of the respondent's brief and appendix incorporated facts outside of the record. The parties were ordered to brief the issue of whether the material the petitioner sought stricken from the respondent's brief was an appropriate offer of proof on appeal under the rationale of *In re Lukas K.*, 300 Conn. 463, 14 A.3d 990 (2011). The respondent does not address the propriety of the inclusion of the non-record material as to his abandonment claim. Instead, the respondent chose to argue in a footnote in his reply brief that *In re Lukas K.* supports his claim that the non-record material he submitted would help the reviewing court in analyzing his due process claim.

"Neither this court nor the trial court may speculate, or make a finding with respect to a termination of parental rights petition, on the basis of evidence that is not in the record." *In re Selena O.*, 104 Conn. App. 635, 649, 934 A.2d 860 (2007); see also *In re Jah'za G.*, 141 Conn. App. 15, 27 n.8, 60 A.3d 392 (declining to review claim where argument referred to evidence not in the record and the court had granted the petitioner's motion to strike portions of the argument), cert. denied, 308 Conn. 926, 64 A.3d 329 (2013). Thus, we decline to consider the non-record material offered in support of this claim.

------------------------