******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE EMILIA M. ET AL.*
## (AC 48262)

Seeley, Wilson and Lavine, Js.

*Syllabus*

The respondent mother appealed following the trial court's judgments termi-
nating her parental rights with respect to her minor children and denying
her motion to permanently transfer legal guardianship of the children to
their maternal grandmother, which the court had consolidated with the trial
on the termination of parental rights petitions filed by the petitioner, the
Commissioner of Children and Families. The mother's sole, unpreserved
claim on appeal was that the court's failure to inquire into an alleged conflict
of interest involving the attorney who represented the children at trial denied
the children their federal and state due process rights to conflict free counsel
and that the alleged conflict impacted the court's decision to deny her
motion to transfer guardianship. *Held*:

This court lacked subject matter jurisdiction over the respondent mother's
appeal, as she did not have standing to challenge the denial of her motion
to permanently transfer guardianship of the children because, once her
parental rights had been terminated, which she did not challenge on appeal,
she no longer had a specific, personal and legal interest in the children that
was specially and injuriously affected by the denial of her motion, and, thus,
she was not aggrieved by the denial of the motion.

Argued June 5—officially released June 30, 2025**

*Procedural History*

Petitions by the Commissioner of Children and Fami-
lies to terminate the respondents' parental rights with

---

* In accordance with the spirit and intent of General Statutes § 46b-142
(b) and Practice Book § 79a-12, the names of the parties involved in this
appeal are not disclosed. The records and papers of this case shall be open
for inspection only to persons having a proper interest therein and upon
order of the court.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3)
(2018), as amended by the Violence Against Women Act Reauthorization
Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to
identify any person protected or sought to be protected under a protection
order, protective order, or a restraining order that was issued or applied
for, or others through whom that person's identity may be ascertained.

** June 30, 2025, the date that this decision was released as a slip opinion,
is the operative date for all substantive and procedural purposes.

respect to their minor children, brought to the Superior Court in the judicial district of Litchfield, Juvenile Matters at Torrington, and transferred to the Superior Court in the judicial district of Middlesex, Child Protection Session, where the cases were tried to the court, *Hon. Barbara M. Quinn*, judge trial referee; judgments terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Appeal dismissed.*

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent mother).

*Daniel M. Salton*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (petitioner).

*Opinion*

SEELEY, J. The respondent mother, Cydney M., appeals following the judgments of the trial court, rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her minor children,[1] Emilia M. (Emilia) and Ariella M. (Ariella).[2] On appeal, the respondent raises claims for the first time[3] concerning the minor children's right to conflict free counsel. Specifically, she claims that (1) the attorney who represented the minor children at trial had a conflict of interest and that the court's failure to inquire into that conflict denied the minor children their federal and state due process

---

[1] Pursuant to Practice Book § 79a-6 (c), the attorney for the minor children filed a statement adopting the petitioner's brief in this appeal.

[2] The trial court also rendered judgments terminating the parental rights of the minor children's father, Christopher M., who has filed a separate appeal from those judgments. In this opinion, we refer to Cydney M. as the respondent.

[3] The respondent seeks review of her unpreserved claims pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

rights to conflict free counsel, and (2) the court improperly failed to protect the children's statutory right[4] to conflict free counsel. The respondent has not raised any claim on appeal challenging the judgments terminating her parental rights with respect to the minor children. Because we conclude that this court lacks subject matter jurisdiction over the respondent's appeal, we dismiss the appeal.

The following facts, as found by the trial court, and procedural history are relevant to this appeal. The respondent, who has been "diagnosed with major depressive disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder, as well as opioid use in standing remission and borderline personality disorder . . . is now thirty-one years old, and her first child was born when she turned twenty-five. She met Christopher M., the father of her two children, approximately ten years ago, and they were married in 2015. Christopher [M.] is some seventeen years older than [the respondent], and he has two adult children from earlier relationships . . . . [The respondent] and Christopher [M.] have had a volatile relationship marked with intimate partner violence and ongoing difficulties related to significant mental health issues and

---

[4] The respondent does not cite a specific statute that provides for the right to conflict free counsel in a termination of parental rights proceeding. Rather, she cites General Statutes § 46b-129a (2) (A), which addresses the right to counsel in neglect proceedings but "is equally applicable to termination proceedings." *In re Christina M.*, 90 Conn. App. 565, 577–78, 877 A.2d 941 (2005), aff'd, 280 Conn. 474, 908 A.2d 1073 (2006). Section 46b-129a (2) (A) provides in relevant part that "[a] child shall be represented by counsel knowledgeable about representing such children," as well as § 46b-129a (2) (C), which addresses the primary role of counsel for a child in such a proceeding. She also asserts that "[t]here is no dispute that the minor children have 'the right of confrontation and cross-examination and shall be represented by counsel in each and every phase of any and all proceedings in child protection matters, including appeals.' Practice Book § [32a-1]. This statutory right also implies a right to effective assistance of counsel, which, for the same reasons articulated in our constitutional cases, also implies conflict free counsel."

ongoing drug use by both. All who have counseled or interviewed the parents have spoken of a 'toxic relationship' that is harmful to both of them but which they had not been able to set aside during the course of these proceedings. In the past, each has represented to [the Department of Children and Families (department)] and their therapeutic counselors that they were not in a relationship when secretly they remained involved with each other until very recently. . . . Ending their relationship was a necessary predicate to each of the parents' rehabilitation efforts, as their intimate partner violence and escalating arguments and fights negatively impacted their two daughters and were a continuing source of trauma for the children.

"During the time between the birth of Ariella, the oldest child, in 2018, and September 12, 2022, when . . . orders of temporary custody with neglect petitions were filed, there were a total of nine referrals to [the department] due to the ever escalating, more serious intimate partner violence and neglectful care of the two children, Emilia having been born in September, 2020. The difficulties and arguments that arose between the parents were exacerbated by [the respondent's] mental health difficulties [and] her out-of-control behaviors and reflected the ever growing toxic relationship between her and Christopher [M.]." (Footnote omitted.)

In August, 2022, the department received a referral from the children's maternal grandmother alleging that Christopher M. was touching the children inappropriately while the children were naked. The respondent apparently had videotaped the children in the nude demonstrating the alleged acts of sexual abuse by Christopher M. and accusing their father of touching them inappropriately.[5] The respondent subsequently admitted that she had coached the children. Following these

_____

[5] The trial court specifically found that the "the police [had] reported to [the department] that [the respondent] had sexually exploited her children by taking videos of them on her cell phone in the nude. . . . [The respon-

events, the petitioner sought and received orders of temporary custody for the children, who were placed in the foster home of their aunt. The children subsequently were adjudicated neglected and committed to the custody of the petitioner. While in the home of their aunt, the children engaged in sexualized behaviors that became too difficult for their aunt to handle, which resulted in the children being separated, with Ariella being placed in the care of her maternal grandmother[6] and Emilia ultimately being placed with a foster family.

On December 8, 2023, the petitioner filed petitions for the termination of the respondent's parental rights with respect to both children, alleging that the respondent had failed to achieve a sufficient degree of personal rehabilitation as would encourage the belief that, given the age and needs of the children, she could assume a responsible position in their lives within a reasonable time. While those petitions were pending, the respondent filed a motion seeking a permanent transfer of guardianship of the children to their maternal grandmother (motion to transfer guardianship).[7] The trial on the termination petitions was consolidated with the

dent] also had sent similar videos to a friend, who also reported her to the police for 'kiddy porn.' It appeared that [the respondent] was regularly coaching the children to accuse their father of sexual abuse, as he was on probation and was a registered sex offender. She has several times admitted that she did coach them because of her concerns. She was arrested on December 1, 2022, [on] charges of possession of child pornography and promoting minor[s] [in an] obscene performance, as well as risk of injury to children. She was incarcerated at York Correctional Institution and subsequently released on bond. There is a full no contact protective order in place protecting the children from [the respondent], who, with the exception of one supervised visit during a psychological evaluation, has had no contact with her children since November, 2022, when a motion to suspend visitation was granted by the court. [The respondent] was ultimately convicted of these charges and sentenced to a period of incarceration from January, 2024, to June, 2024."

[6] In March, 2024, the maternal grandmother could no longer take care of Ariella, who, ultimately, was placed in the same foster home as Emilia.

[7] General Statutes (Rev. to 2023) § 46b-129 (j) (6) provides: "Prior to issuing an order for permanent legal guardianship, the court shall provide notice to each parent that the parent may not file a motion to terminate

hearing on the motion to transfer guardianship, and the consolidated proceeding took place on various dates in July and August, 2024. In its memorandum of decision, the court found by clear and convincing evidence that the statutory ground for termination—a failure to achieve sufficient personal rehabilitation—had been established. In the dispositional phase of the proceeding, the court made findings as to each of the criteria set forth in General Statutes § 17a-112 (k) and concluded that it was in the children's best interests to terminate the respondent's parental rights.[8] Therefore, the court rendered judgments terminating the respondent's parental rights and appointing the petitioner as

the permanent legal guardianship, or the court shall indicate on the record why such notice could not be provided, and the court shall find by clear and convincing evidence that the permanent legal guardianship is in the best interests of the child or youth and that the following have been proven by clear and convincing evidence:

"(A) One of the statutory grounds for termination of parental rights exists, as set forth in subsection (j) of section 17a-112, or the parents have voluntarily consented to the establishment of the permanent legal guardianship;

"(B) Adoption of the child or youth is not possible or appropriate;

"(C) (i) If the child or youth is at least twelve years of age, such child or youth consents to the proposed permanent legal guardianship, or (ii) if the child is under twelve years of age, the proposed permanent legal guardian is: (I) A relative, (II) a caregiver, or (III) already serving as the permanent legal guardian of at least one of the child's siblings, if any;

"(D) The child or youth has resided with the proposed permanent legal guardian for at least a year; and

"(E) The proposed permanent legal guardian is (i) a suitable and worthy person, and (ii) committed to remaining the permanent legal guardian and assuming the right and responsibilities for the child or youth until the child or youth attains the age of majority."

[8] Specifically, the court found that the respondent is "not able to have the children in [her] care, as [she] admits she cannot care for them . . . . There is no question that these children, at six and four years of age, require permanent and competent caretakers who can consistently and reliably deal with their special needs, their emotional requirements and provide daily loving care for both of them. . . . After considering Ariella's and Emilia's ages and the totality of circumstances, including the strength of Ariella's bond to her grandmother and the other familial connections, the court concludes, from the clear and convincing evidence, that, even despite Ariella's bond to her grandmother and also to her mother, termination of [the respondent's] parental right[s] [with respect to the children is] in these young girls' best interests." (Citation omitted.)

the statutory parent. The court also denied the motion to transfer guardianship, concluding, inter alia, that "[t]he proposed placement would not foster the sustained growth, development and well-being of [the] two young girls, nor the continuity and stability of their environment."[9] This appeal followed.

[9] With respect to the motion to transfer guardianship, the court ruled: "[The respondent] filed a motion to transfer permanent guardianship of the children to [their maternal grandmother] on July 10, 2024. Ariella had lived with her maternal grandmother . . . from November, 2022, until April, 2024. Both girls had spent considerable time in her care before their removal from the care of their parents. In March, 2024, [the maternal grandmother], contemplating the probable outcome of [a] back surgery she was facing, decided she could no longer care for Ariella in her home, a decision she testified that she now deeply regrets. The motion for transfer of permanent guardianship was initially filed by [the respondent] without discussion with [the maternal grandmother], although she later acquiesced in it. . . .

"[W]hen the court considers the further inquiry into what is in the best interests of these two girls, the court cannot conclude from the evidence that placing them with [their maternal grandmother] is in their best interests.

"First, as noted when reviewing the girls' placement history and functioning, the court concludes that [the maternal grandmother] valued the company of Ariella and was ambivalent about Emilia. Certainly, such internal family preferences are harmful to the child so denigrated to a second-class status. But also, they are harmful to the preferred child, as that child assumes an identity based on favoritism and enjoys an objectively unearned position. The best outcome for these children is for each of them to be valued for their unique gifts and personalities, an outcome not available to them with their grandmother . . . . In addition, [the maternal grandmother] is unable to offer the two girls separate rooms for sleeping and, so, could not keep them apart, should they then engage in negative behaviors as they had in the past. [The maternal grandmother], the court finds, was not entirely credible when she testified and stated she would take both girls, as from other statements it was obvious she would prefer to only have Ariella in her care. Ariella has made it plain that she wishes to live with [the maternal grandmother] and that this outcome will happen. Her thoughts do not include her sister. While it is understandable she would like to stay in a household where she enjoys a special status, she is only six years old and too young to make such a decision or to know what is best for her.

"Last but not least, these two girls need structure, predictability of care and a competent caretaker to guide them into a productive adulthood. . . . [W]hen . . . [the respondent and Christopher M.] would rely on [the maternal grandmother] to assist them when the girls were younger, she was unpredictable and unreliable, and would forget to take them when she had promised to do [so]. There is some evidence that similar events occurred while Ariella was in her care and custody. In addition, she would need to manage [the respondent's] desire in the future to visit with Ariella or Emilia

On appeal, the respondent does not challenge the judgments terminating her parental rights. In particular, she has raised no claim relating to (1) any of the court's factual findings in support of its judgments terminating her parental rights, (2) the court's finding, by clear and convincing evidence, that the petitioner satisfied the statutory ground for termination—that the respondent had failed to achieve sufficient personal rehabilitation within the meaning of § 17a-112 (j) (3) (B) (i)—and (3) the court's findings, by clear and convincing evidence, in the dispositional phase concerning the factors delineated in § 17a-112 (k) and that the termination of the respondent's parental rights was in the children's best interests. Instead, she raises unpreserved claims concerning an alleged conflict of interest of the children's counsel, with the focus of her briefing being on how the alleged conflict impacted the court's decision denying her motion to transfer guardianship.[10]

---

if both were placed with her. [The maternal grandmother], in the court's opinion, as has occurred in the past, would be unable to keep the peace, and the child or children would again be exposed to fights and violence, all to their detriment. Ariella remains connected to her mother and the tug-of-war, even if there were no actual fighting between the grownups, [and that] could also impair her growing sense of permanency if placed with her grandmother.

"It may be that [the maternal grandmother] is a suitable and worthy person for another child such as her grandson, who resides with her, but she is not such a person for Ariella, despite their closeness. A transfer of guardianship of Emilia to her is also not in Emilia's best interests, as she is not truly wanted. The proposed placement would not foster the sustained growth, development and well-being of these two young girls, nor the continuity and stability of their environment. The court therefore denies the motion for transfer of guardianship based on the evidence before it." (Citation omitted.)

[10] In her principal appellate brief, the respondent references the termination trial in discussing a child's right to counsel in such a proceeding and the alleged conflict that existed with the children's counsel. She also mentions the termination trial while discussing the harmfulness of the alleged conflict of interest, stating that "the representation of the minor children in the termination trial necessarily impacted the trial court's decision as to the [respondent's] motion to transfer guardianship," and in arguing that "Ariella was, in effect, unrepresented throughout the termination trial and with regard to the motion to transfer guardianship." Aside from these passing references, which are not adequately briefed claims of error, she has neither challenged any of the court's findings and conclusions with respect to its

As a result of the respondent's failure to challenge the judgments terminating her parental rights, the petitioner has raised a threshold jurisdictional issue as to whether the respondent has standing to pursue this appeal. Specifically, the petitioner argues that, because the respondent has not challenged any aspect of the judgments terminating her parental rights, she effectively has conceded that those judgments are "legally and factually sound." Therefore, the petitioner, citing *In re Gabriella M.*, 221 Conn. App. 844, 851, 303 A.3d 330, cert. denied, 348 Conn. 925, 304 A.3d 442 (2023), contends that the respondent "lacks standing to challenge the [denial of] . . . her motion for permanent transfer of guardianship," in that "[b]ecause her [parental] rights have properly been terminated, she no longer has an interest in the children and is not aggrieved by the denial of the motion for permanent transfer of guardianship."

The respondent counters, without specifically addressing or distinguishing *In re Gabriella M.*,[11] by stating: "In this case, although [she] admitted that she was not,

judgments terminating her parental rights nor suggested that a *new trial on the termination petitions* is warranted, and she does not dispute the petitioner's contention that she has not challenged the judgments terminating her parental rights; in fact, her attorney acknowledged at oral argument before this court that the respondent "accept[s] the termination order[s]." We, therefore, deem any such claims abandoned. See, e.g., *In re A. H.*, 226 Conn. App. 1, 32 n.24, 317 A.3d 197, cert. denied, 349 Conn. 918, 317 A.3d 784 (2024). In contrast, the respondent discussed in her appellate briefs the standard for a court's adjudication of a motion to transfer guardianship and the court's best interest finding related to the motion to transfer guardianship. Accordingly, we construe the respondent's vague statement in her principal appellate brief that "this court should reverse the ruling of the trial court and remand the case for further proceedings" as a request for a new hearing only with respect to her motion to transfer guardianship.

[11] We note that the respondent's counsel was asked at oral argument before this court to explain how *In re Gabriella M.* is distinguishable from the present case. In his response, counsel did not sufficiently address the jurisdictional issue of standing as discussed in *In re Gabriella M.* but, rather, simply stated that this case differed because he was attacking the validity of the hearing itself.

at present, able to assume care and custody of her children, she did not consent to the termination of her parental rights. Therefore, her interest in the familial relationship and, more specifically, who would assume care and custody of her children as she attempted to rehabilitate, continued to coexist with the interests of her children and provides her with standing to bring this claim." She further contends that a parent "can challenge on appeal a decision on a motion for permanent transfer of guardianship" and that she did not lose her right to appeal simply because the court consolidated and tried jointly the termination petitions with the motion to transfer guardianship. In this regard, she appears to suggest that her right to challenge the denial of her motion to transfer guardianship was not dependent on her raising a challenge to the termination of her parental rights. We reject the respondent's arguments and agree with the petitioner that our resolution of this appeal is controlled by *In re Gabriella M.*

"[A] threshold inquiry . . . upon every appeal presented . . . is the question of appellate jurisdiction. . . . It is well established that the subject matter jurisdiction of the Appellate Court and of [our Supreme Court] is governed by [General Statutes] § 52-263, which provides that an aggrieved party may appeal to the court having jurisdiction from the final judgment of the court." (Internal quotation marks omitted.) *In re Riley B.*, 342 Conn. 333, 342, 269 A.3d 776 (2022). "Aggrievement, in essence, is appellate standing. . . . It is axiomatic that aggrievement is a basic requirement of standing, just as standing is a fundamental requirement of jurisdiction. . . . There are two general types of aggrievement, namely, classical and statutory; either type will establish standing, and each has its own unique features. . . . The test for determining [classical] aggrievement encompasses a well settled twofold determination: first, the party claiming aggrievement must

demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest shared by the community as a whole; second, the party claiming aggrievement must establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . . *Russo* v. *Thornton*, 217 Conn. App. 553, 564, 290 A.3d 387, cert. denied, 346 Conn. 921, 291 A.3d 608 (2023). Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . . *Healey* v. *Mantell*, 216 Conn. App. 514, 524, 285 A.3d 823 (2022)." (Internal quotation marks omitted.) *In re Gabriella M.*, supra, 221 Conn. App. 848–49.

In *In re Gabriella M.*, as in the present case, the trial court held a consolidated trial on petitions to terminate the respondent parents' parental rights with respect to their two minor children and a motion for the transfer of permanent legal guardianship of the minor children to their maternal grandmother, which had been filed by the children's mother and in which the respondent father had joined. Id., 847. The court rendered judgments terminating the parental rights of both parents and denying the motion for transfer of permanent legal guardianship, and the parents filed separate appeals with this court. Id., 845 n.1, 847–48. *In re Gabriella M.* concerns the father's appeal, in which he did not challenge the judgments terminating his parental rights but, rather, challenged only the court's denial of the motion to transfer permanent legal guardianship of the children to their maternal grandmother. Id., 848.

This court concluded that the father was "not aggrieved by the decision of the trial court denying the motion for permanent transfer of guardianship" and, thus, dismissed the appeal. Id., 846. In reaching that conclusion, this court stated: "Termination of parental rights means the complete severance by court order of

the legal relationship, with all its rights and responsibilities, between the child and the child's parent . . . . General Statutes § 17a-93 (5); accord General Statutes § 45a-707 (8). Severance of this legal relationship means that the constitutional right to direct the child's upbringing, as well as the statutory right to visitation, no longer exists . . . . In effect, the [biological parent] is a legal stranger to the child with no better claim to advance the best interests of the child than any remote stranger. . . . *In re Riley B.*, [supra, 342 Conn. 345].

"The decision challenged by the [father] in the present case is the court's denial of the motion for permanent transfer of guardianship to the maternal grandmother. Permanent guardianship is defined as a guardianship that is intended to endure until the minor reaches the age of majority without termination of the parental rights of the minor's parents . . . . General Statutes § 45a-604 (8); see also *In re Brian P.*, 195 Conn. App. 582, 592, 226 A.3d 152 (2020) (a permanent guardianship is intended to occur without the termination of parental rights). Accordingly, we must determine whether the [father] is aggrieved by the trial court's denial of the motion for permanent transfer of guardianship, in light of his decision not to challenge the trial court's termination of his parental rights.

"The [father] had an interest in the outcome of the motion for permanent transfer of guardianship when he joined that motion at the time of the trial, prior to the termination of his parental rights. This, however, does not end our inquiry. Once the [father's] parental rights had been terminated, and in the absence of any challenge to those final judgments, the [father] no longer had a specific, personal and legal interest that was specially and injuriously affected by the trial court's denial of the motion for permanent transfer of guardianship. In other words, in the context of this appeal, the court's order denying the motion for permanent transfer

of guardianship does not interfere with any interest of the [father], as his parental rights have been terminated. In the absence of a successful challenge to the termination of his parental rights, the [father] is a legal stranger to the child. . . . *In re Riley B.*, supra, 342 Conn. 345. Accordingly, the [father] is not aggrieved by the court's decision. Thus, this court lacks subject matter jurisdiction over the [father's] appeal." (Footnotes omitted; internal quotation marks omitted.) *In re Gabriella M.*, supra, 221 Conn. App. 849–51.

We conclude that *In re Gabriella M.* is squarely on point and controls the disposition of this appeal. Like the respondent father in *In re Gabriella M.*, the respondent in the present case had an interest in the outcome of her motion to transfer guardianship of the children at the termination trial, *before* the termination of her parental rights. Because her parental rights have been terminated and she has not raised any challenge to the judgments terminating those rights, she "no longer had a specific, personal and legal interest that was specially and injuriously affected by the trial court's denial of" her motion to transfer guardianship. Id., 851. That is, "in the context of this appeal, the court's [denial of] the motion for permanent transfer of guardianship does not interfere with any interest of the respondent . . . ." Id. The termination of the respondent's parental rights severed her legal relationship with her children, such that she no longer has a constitutional right to direct her children's upbringing, and she is, in effect, a " 'legal stranger' " to the children. Id., 849. Therefore, the respondent is not aggrieved by the court's decision denying her motion to transfer guardianship.

Moreover, contrary to the respondent's assertions, she did not "lose her right to appeal" as a result of the consolidation of the termination petitions and motion to transfer guardianship for trial; instead, consistent

with *In re Gabriella M.*, it was incumbent on the respondent also to challenge the judgments terminating her parental rights because, in the absence of such a challenge and with her parental rights having been terminated, she is a legal stranger to the child and no longer has a specific personal and legal interest that has been injuriously affected by the court's decision denying her motion to transfer guardianship.[12] In light of *In re Gabriella M.*, there is no merit to the respondent's claim that

[12] In her appellate briefs and at oral argument before this court, the respondent argues that she should not have to raise a frivolous claim on appeal attacking the termination judgments to be able to seek review of the decision denying her motion to transfer guardianship. Such a claim is unavailing in light of this court's decision in *In re Gabriella M.*, supra, 221 Conn. App. 844, in which this court explained that, "in the absence of any challenge to [the final judgments terminating his parental rights], the respondent no longer had a specific, personal and legal interest that was specially and injuriously affected by the trial court's denial of the motion for permanent transfer of guardianship" and that, "[i]n the absence of a *successful challenge* to the termination of his parental rights, the respondent is a legal stranger to the child." (Emphasis added; internal quotation marks omitted.) Id., 851. This court determined that subject matter jurisdiction over a challenge to the denial of the motion to transfer permanent guardianship is dependent on not merely a challenge to the termination judgment, but a *successful challenge* to the termination judgment. This court by no means suggests that a party should attempt to invoke this court's jurisdiction by filing frivolous appeals. Nor does *In re Gabriella M.* suggest that; rather, *In re Gabriella M.* holds that, for a party to be aggrieved by the denial of a motion to transfer permanent legal guardianship, the party necessarily must "successful[ly] challenge" the termination judgment. Id.

Additionally, the respondent's assertion fails to take into consideration the fact that the termination of her parental rights results in the complete severance of her parental relationship with her children, which, in turn, impacts her standing to raise claims on appeal related to the children. See General Statutes § 52-263 (only "aggrieved" parties "may appeal to the court having jurisdiction from the final judgment of the court"); see also *In re Riley B.*, supra, 342 Conn. 342. Pursuant to *In re Gabriella M.*, supra, 221 Conn. App. 850–51, for a parent whose parental rights have been terminated to establish aggrievement to challenge on appeal the denial of a motion to transfer permanent legal guardianship that was heard jointly with the termination petition, the parent also must challenge the termination of the parent's parental rights. Our decision in *In re Gabreilla M.* in no way suggests that such aggrievement can be established by way of a frivolous attack on the termination judgment. It also bears repeating that a permanent transfer of legal guardianship is a distinct disposition from the termination of parental rights and is intended to occur without a termination of parental rights; in

she was aggrieved by the denial of her motion to transfer guardianship despite her failure to challenge the judgments terminating her parental rights.[13]

Relying on *In re Christina M.*, 280 Conn. 474, 487, 908 A.2d 1073 (2006), the respondent asserts that our Supreme Court has "held that a respondent in a termination of parental rights petition has standing to assert a claim that her children were denied their constitutional right to conflict free representation in the termination proceeding." She continues, stating that her "right to raise this claim springs from the fact that the rights of the [children] 'coexist and are intertwined with those of the parent.' . . . The desire and right of a parent to maintain a familial relationship with a child cannot be separated from the desire and best interest of a child

other words, the two dispositions are mutually exclusive. See id., 850; see also General Statutes § 45a-604 (8) (defining permanent guardianship as guardianship "that is intended to endure until the minor reaches the age of majority without termination of the parental rights of the minor's parents"); *In re Brian P.*, supra, 195 Conn. App. 592 (same); footnote 17 of this opinion (discussing reversal of termination of parental rights judgments as required predicate to relief sought for denial of motion for transfer of guardianship).

[13] We note that, if the court had not consolidated the matters for trial or had ruled on the motion to transfer guardianship prior to terminating the respondent's parental rights, the respondent very well may have been able to challenge that ruling on appeal. As *In re Gabriella M.*, supra, 221 Conn. App. 851, instructs, however, in circumstances similar to those in the present case, the termination of a respondent parent's parental rights forecloses any such challenge when a respondent parent does not also challenge the judgments terminating her parental rights. This is so because a parent whose parental rights have been terminated is, in effect, a legal stranger to the child in the absence of a successful challenge to the termination of parental rights and, thus, is not aggrieved by a court's simultaneous ruling denying a motion for the permanent transfer of guardianship. "The right of appeal is purely statutory . . . . The statutory right to appeal is limited to appeals by *aggrieved* parties from final judgments." (Emphasis added; internal quotation marks omitted.) *In re Amani O.*, 221 Conn. App. 59, 71, 301 A.3d 565 (2023). Moreover, as we have stated in this opinion, *In re Gabriella M.*, controls our disposition of this appeal. We are bound by our own precedent. See, e.g., *Jefferson Solar, LLC* v. *FuelCell Energy, Inc.*, 224 Conn. App. 710, 728, 315 A.3d 302 (2024) (" '[T]his court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc.' ").

either to maintain or to abandon that relationship or the interest of the state in safeguarding the welfare of children." (Citations omitted.) According to the respondent, because the children "sought different outcomes at the trial,[14] either with regard to termination or to the [respondent's] motion to transfer guardianship . . . the attorney for the minor children labored under a concurrent conflict of interest"; (footnote added); which "necessarily [would have] impacted the trial court's decision as to the [respondent's] motion to transfer guardianship."

We conclude that the respondent's reliance on *In re Christina M.*, supra, 280 Conn. 481, is misplaced. In that case, our Supreme Court addressed "the issue of a parent's standing to raise concerns about his or her child's representation"; id.; and concluded that the respondent parents had "standing to assert a claim that their children were denied their constitutional right to conflict free representation in the *termination proceeding* because the children were denied the appointment of an attorney to advocate for their express wishes during the termination proceeding."[15] (Emphasis added.) Id., 476. The court, however, did not reach the substantive issues inherent in such a claim due to an inadequate

[14] The record shows that Ariella wanted to return to the care and custody of her maternal grandmother, whereas Emilia has developed significant emotional ties to her foster family.

[15] In reaching that conclusion, the court stated: "[T]he respondents have a direct, personal stake in the outcome of the termination proceeding. . . . Inadequate representation of the children . . . could harm the respondents because those roles help shape the court's view of the best interests of the children, which serves as the basis upon which termination of parental rights is determined." (Citation omitted; footnote omitted.) *In re Christina M.*, supra, 280 Conn. 485–86. In the present case, as we have noted, the respondent has not challenged the outcome of the termination proceeding. See footnote 10 of this opinion. Moreover, even if we were to apply the reasoning of *In re Christina M.* to the respondent's motion to transfer guardianship in the present case, our conclusion that the respondent was not aggrieved by the denial of her motion to transfer guardianship is dispositive of this appeal.

record. See id. Significantly, *In re Christina M.* did not involve a motion for the permanent transfer of guardianship, and the respondent parents in that case challenged the judgments terminating their parental rights on appeal, whereas, in the present case, no such challenge has been made by the respondent. See id., 478. *In re Christina M.*, therefore, is distinguishable from the present case,[16] which is more analogous to *In re Gabriella M.*, supra, 221 Conn. App. 844.

Our Supreme Court, in discussing the effect that a termination of parental rights has on the rights of a former parent, has stated: "Termination of parental rights means the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and the child's parent . . . . General Statutes § 17a-93 (5); accord General Statutes

---

[16] As we noted previously in footnote 11 of this opinion, the respondent's counsel, at oral argument before this court and in the respondent's appellate briefs, has asserted a claim that the underlying proceeding was fundamentally flawed as a result of the alleged conflict of interest, which thereby caused the adversarial system to break down. Even if this court were to conclude that, in light of this claim, the present case is more analogous to *In re Christina M.* and, thus, that the respondent has standing to raise the claim, any such claim, nevertheless, would be moot, as there is no practical relief that this court could afford the respondent in light of her failure to challenge the judgments terminating her parental rights. "[A]ggrievement and mootness implicate the court's subject matter jurisdiction. . . . Aggrievement, which implicates a party's standing, and mootness are related concepts. Both doctrines are founded on the same policy interests . . . namely, to assure the vigorous presentation of arguments concerning the matter at issue." (Citations omitted; internal quotation marks omitted.) *In re Allison G.*, 276 Conn. 146, 155–56, 883 A.2d 1226 (2005). An appeal is moot when "an appellate court [is precluded] from granting any practical relief through its disposition of the merits . . . ." (Internal quotation marks omitted.) Id., 165. In the present case, if we were to reverse the court's denial of the motion to transfer guardianship, the judgments terminating the respondent's parental rights would remain "final and unchallenged"; *State* v. *T.D.*, 286 Conn. 353, 365, 944 A.2d 288 (2008); thus, a new proceeding on the motion to transfer guardianship would be futile. See General Statutes § 45a-604 (8) (defining permanent guardianship as guardianship "that is intended to endure until the minor reaches the age of majority without termination of the parental rights of the minor's parents"). Accordingly, the claim would be moot.

§ 45a-707 (8). Severance of this legal relationship means that the constitutional right to direct the child's upbringing, as well as the statutory right to visitation, no longer exists . . . . *In re Ava W.*, [336 Conn. 545, 560, 248 A.3d 675 (2020)]." (Internal quotation marks omitted.) *In re Riley B.*, supra, 342 Conn. 345.

"In effect, the [biological parent] is a legal stranger to the child with no better claim to advance the best interests of the child than any remote stranger. . . . Once judgment terminating parental rights is rendered, the court is authorized to issue posttermination orders only to protect the child's interests, not the biological parents' interests." (Citations omitted; internal quotation marks omitted.) Id. The court explained further that, "when termination of parental rights is deemed the proper disposition, there is clear and convincing evidence that the biological parent is unable and/or unwilling to put her child's best interests ahead of her own and that there is no reasonable prospect that this fact will change in the near term. In this context, the biological parent is in no position to claim the right to represent the child's best interests." Id., 352. In the present case, given the severance of the legal relationship between the respondent and the children by way of the court's termination of the respondent's parental rights, which the respondent has not challenged, the respondent is attempting to assert rights that she no longer possesses.[17] See *In re Gabriella M.*, supra, 221 Conn. App. 851.

Accordingly, because the respondent is not aggrieved by the trial court's decision denying her motion to trans-

---

[17] We also note that "permanent guardianship is intended to occur without the termination of parental rights." (Internal quotation marks omitted.) *In re Gabriella M.*, supra, 221 Conn. App. 850. Thus, as this court pointed out in *In re Gabriella M.*, the relief that the respondent seeks concerning a new trial as to her motion to transfer guardianship would "necessitate reversal of the judgments terminating [her] parental rights, which [she] has not challenged on appeal." Id., 851 n.7.

fer guardianship, this court lacks subject matter juris-diction over the respondent's appeal.[18]

The appeal is dismissed.

In this opinion the other judges concurred.

---

[18] In light of our dismissal of this appeal, we do not reach the substantive issues inherent in the respondent's claims concerning the children's right to have conflict free representation.